# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| | |
|---|---|
| NOVARTIS AG, NOVARTIS PHARMACEUTICALS CORPORATION, MITSUBISHI TANABE PHARMA CORPORATION, and MITSUI SUGAR CO., LTD.,<br><br>          Plaintiffs,<br><br>    v.<br><br>EZRA VENTURES, LLC<br><br>          Defendant. | Civil Action No. 4:15-cv-00095-KGB |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STAY THE SECOND-FILED CASE
IN THE EASTERN DISTRICT OF ARKANSAS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT................................................................................................................2

    A.    Jurisdiction Is Not "Unsettled" In Delaware, The First-Filed Forum.......................2

    B.    Ezra's Speculation Regarding Case Schedules Is No Sound Reason To Depart From The First-To-File Rule ...................................................................................5

    C.    No Categorical Exception Exists For Hatch-Waxman Litigation.............................7

    D.    A Stay Is Warranted Even In The Absence Of The First-To-File Rule...................8

III.    CONCLUSION...........................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Mylan Pharm., Inc.*,
 No. 05 C 6561, 2006 WL 850916 (N.D. Ill. Mar. 28, 2006) ....................................................11

*Acorda Therapeutics, Inc., v. Mylan Pharm., Inc.*,
 Civ. A. No. 14-935-LPS, 2015 WL 186833 (D. Del. Jan. 14, 2015)..........................................3

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
 No. 1:07-CV-993, 2007 WL 4284877 (W.D. Mich. Dec. 3, 2007)......................................7, 11

*Adams v. Tyson Foods, Inc.*,
 No. 07-CV-4019, 2007 WL 1539325 (W.D. Ark. May 25, 2007) ............................................8

*Allergan, Inc. v. Actavis, Inc.*,
 Case No. 2:14-CV-638 Lead Case, Case No. 2:14-CV-188 Member Case, 2014 WL 7336692
 (E.D. Tex. Dec. 23, 2014)...........................................................................................................3

*AstraZeneca AB v. Mylan Pharm., Inc.*,
 Civ. A. No. 14-696-GMS, 2014 WL 5778016 (D. Del. Nov. 5, 2014) .................................3, 5

*Aventis Pharma Deutschland GmbH v. Lupin Ltd.*,
 403 F. Supp. 2d 484 (E.D. Va. 2005) ........................................................................................3

*Crews & Assocs., Inc. v. Nuveen High Yield Mun. Bond Fund*,
 783 F. Supp. 2d 1066 (E.D. Ark. 2011)...................................................................................12

*Eli Lilly & Co. v. Mylan Pharms., Inc.*,
 No. 1:14-CV-00389-SEB-TAB, 2015 WL 1125032 (S.D. Ind. Mar. 12, 2015) .......................3

*Eli Lilly & Co. v. Teva Pharm. USA, Inc.*,
 557 F.3d 1346 (Fed. Cir. 2009)................................................................................................10

*Forest Labs., Inc. v. Amneal Pharm. LLC*,
 Civ. A. No. 14-508-LPS, 2015 WL 880599 (D. Del. Feb. 26, 2015), *report and
 recommendation adopted*, Civ. A. No. 14-508-LPS, 2015 WL 1467321 (D. Del. Mar. 30,
 2015) ..........................................................................................................................................3

*Genentech, Inc. v. Eli Lilly & Co.*,
 998 F.2d 931 (Fed. Cir. 1993)................................................................................................2, 4

*Kinney v. Dole Packaged Foods, LLC*,
 No. 5:14-CV-05182, 2014 WL 6859734 (W.D. Ark. Oct. 23, 2014)....................................6, 8

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) .............................................................................................................. 8

*Novartis AG v. Ezra Ventures LLC*,
 No. 15-00150-LPS (D. Del.) ............................................................................... *passim*

*Novartis Pharm. Corp. v. Mylan Inc.*,
 Civ. A. No. 14-777-RGA, Civ. A. No. 14-820-RGA, 2015 WL 1246285 (D. Del. Mar. 16,
 2015) .................................................................................................................................. 3

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
 989 F.2d 1002 (8th Cir. 1993) ............................................................................................. 9

*PDL Biopharma, Inc. v. Sun Pharm. Indus., Ltd.*,
 No. 07-cv-11709, 2007 WL 2261386 (E.D. Mich. Aug. 6, 2007) .............................. 7, 8, 9, 11

*Orthmann v. Apple River Campground, Inc.*,
 765 F.2d 119 (8th Cir. 1985) ........................................................................................... 4, 8

*Otsuka Pharm. Co. v. Mylan Inc.*,
 Civ. A. No. 14-4508 (JBS/KMW), 2015 WL 1305764 (D.N.J. Mar. 23, 2015) ...................... 3

*Pfizer Inc. v. Apotex Inc.*,
 640 F. Supp. 2d 1006 (N.D. Ill. 2009) ..................................................................... 7, 9, 10

*Pfizer, Inc. v. Mylan, Inc.*,
 C.A. No. 1:09-CV-79, 2009 WL 10270101 (N.D.W. Va. Nov. 20, 2009) ......................... 7, 11

*Pfizer Inc. v. Sandoz Inc.*,
 C.A. No. 09-742-JJF, 2010 WL 256548 (D. Del. Jan. 20, 2010) ........................................... 7

*Ralcorp Holdings, Inc. v. Frito-Lay N. Am., Inc.*,
 No. 1:12CV00018 JLH, 2012 WL 933137 (E.D. Ark. Mar. 20, 2012) ................................... 8

*Schering Corp. v. Caraco Pharm. Labs., Ltd.*,
 No. 06-cv-14386, 2007 WL 1648908 (E.D. Mich. June 6, 2007) .......................................... 8

*Senju Pharm. Co. v. Metrics, Inc.*,
 Civ. A. No. 14-3962 (JBS/KMW), 2015 WL 1472123 (D.N.J. Mar. 31, 2015) ..................... 3

*Takeda Pharm. Co. v. Mylan, Inc.*,
 No. 12CV0026, 2012 WL 932147 (W.D. Pa. Mar. 19, 2012) ................................................ 8

*Williford v. Armstrong World Indus., Inc.*,
 715 F.2d 124 (4th Cir. 1983) ............................................................................................ 4, 5

**I.     INTRODUCTION**

Ezra does not dispute that the first-to-file rule applies to this case. Instead, Ezra asks this Court to depart from the rule based solely on Ezra's beliefs that: (1) it is not subject to personal jurisdiction in Delaware; (2) this case and any resulting appeals will allegedly resolve more quickly here than in Delaware; and (3) an exception to the rule should apply when plaintiffs file complaints in two jurisdictions. Ezra is wrong on all three counts.

There is nothing unsettled about jurisdiction in Delaware, the first-filed forum. The Delaware district court denied Ezra's motion to dismiss, denied Ezra's motion to transfer, and ordered Ezra to participate in the Delaware case without any "further delay." *See* Oral Order, *Novartis AG v. Ezra Ventures, LLC*, C.A. No. 15-150-LPS (D. Del. May 11, 2015), D.I. 27 ( "D. Del. Order"). Furthermore, Ezra's arguments about expediency rely exclusively on Ezra's guesses as to the respective deadlines in the Delaware and Arkansas litigations and any subsequent appeals to the Federal Circuit. Finally, Ezra's argument that an exception should apply where plaintiffs file complaints in two jurisdictions conflicts with a line of cases staying second-filed litigations under the same circumstances, along with this Circuit's precedent rejecting mechanical applications of the first-to-file rule. Accordingly, Ezra has failed to present—as it is required to do—a sound reason to depart from the first-to-file rule in this case.

Ezra has furthermore failed to show why—even if the first-to-file rule were not applied—this case should not be stayed in view of the parallel Delaware litigation, which joins two other related litigations Plaintiffs filed against Actavis Inc. and Actavis Elizabeth LLC (collectively "Actavis"), and HEC Pharm. Co. Ltd., HEC Group, and HEC Pharm USA Inc. (collectively "HEC").[1] These three Delaware cases—including the case against Ezra—will continue

---

[1] Actavis does not dispute jurisdiction in Delaware.

regardless of what the Court decides here in Arkansas. Proceeding in both jurisdictions on separate litigation tracks risks inconsistent decisions that may result in piecemeal appeals to the Federal Circuit.

Given that the Delaware litigation was filed first, will proceed regardless of whether this case proceeds in Arkansas, and is further along than this litigation, Plaintiffs respectfully request that the Court grant their motion to stay this case as the three Gilenya cases proceed in Delaware.

## II.     ARGUMENT

### A.     Jurisdiction Is Not "Unsettled" In Delaware, The First-Filed Forum

Ezra does not dispute that all of the requirements for the first-to-file rule are met in these circumstances: Plaintiffs filed the Delaware case first, the parties are identical, and the claims are identical in both complaints. Accordingly, the burden shifts to Ezra to present a "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995). Ezra has failed to do so.

Instead, Ezra urges the Court to consider "the 'absence of jurisdiction over all necessary or desirable parties' in the first-filed action." Ezra's Opp'n to Mot. to Stay 3, Dkt. No. 28 ("Opp'n") (internal citations omitted). There is no need for the Court to consider this—there is no such "absence of jurisdiction" in Delaware. The Delaware district court denied Ezra's motion to dismiss for lack of personal jurisdiction, along with all of Ezra's subsequent efforts to avoid participating in that case.[2] *See* D. Del. Order, C.A. No. 15-150-LPS, D.I. 27 (denying motion to dismiss and motion to transfer, and ordering Ezra to participate in discovery without "further

---

[2] The Delaware district court denied both Ezra's and HEC's motions to dismiss on the briefs alone, but without prejudice to renew after the Federal Circuit decides other pending interlocutory appeals on personal jurisdiction.

2

delay"). The Delaware district court's denial of Ezra's motion to dismiss for lack of personal jurisdiction is only the latest in a long line of similar denials in Hatch-Waxman litigations.[3]

In support of its argument that this case should be stayed in view of "unsettled" jurisdiction in Delaware, Ezra relies on *Aventis Pharma Deutschland GmbH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005). In *Aventis*, the district court in Virginia refused to stay the second-filed litigation while defendants' motion to dismiss for lack of personal jurisdiction *was still pending* in Maryland, the first-filed forum. *Id*. at 488, 491. By contrast, the Delaware district court *has already denied* Ezra's motion to dismiss and ordered Ezra to proceed with discovery without any "further delay." D. Del. Order, C.A. No. 15-150-LPS, D.I. 27. Ezra's attempt to equate *Aventis'* "pending jurisdictional dispute," Opp'n 5, where the first-filed court had yet to decide on a motion to dismiss, with the Ezra Delaware litigation, where the district court has already denied Ezra's motion to dismiss, clearly falls flat.

---

[3] *See, e.g., Novartis Pharm. Corp. v. Mylan Inc*., Civ. A. No. 14-777-RGA, Civ. A. No. 14-820-RGA, 2015 WL 1246285, at *5 (D. Del. Mar. 16, 2015) (denying and dismissing without prejudice motions to dismiss for lack of personal jurisdiction); *Forest Labs., Inc. v. Amneal Pharm. LLC*, Civ. A. No. 14-508-LPS, 2015 WL 880599, at *15 (D. Del. Feb. 26, 2015), *report and recommendation adopted*, Civ. A. No. 14-508-LPS, 2015 WL 1467321, at *1 (D. Del. Mar. 30, 2015) (denying motion to dismiss); *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc*, Civ. A. No. 14-935-LPS, 2015 WL 186833, at *20 (D. Del. Jan. 14, 2015) (denying and denying without prejudice motions to dismiss as to Mylan Pharmaceuticals Inc. and Mylan Inc., respectively); *AstraZeneca AB v. Mylan Pharm., Inc.*, Civ. A. No. 14-696-GMS, 2014 WL 5778016, at *8 (D. Del. Nov. 5, 2014) (denying motion to dismiss); *Senju Pharm. Co. v. Metrics, Inc*., Civ. A. No. 14-3962 (JBS/KMW), 2015 WL 1472123, at *15 (D.N.J. Mar. 31, 2015) (same); *Otsuka Pharm. Co. v. Mylan Inc*., Civ. A. No. 14-4508 (JBS/KMW), 2015 WL 1305764, at *12 (D.N.J. Mar. 23, 2015) (denying motion to dismiss as to Mylan Inc. and Mylan Pharmaceuticals); *Eli Lilly & Co. v. Mylan Pharm., Inc*., No. 1:14-cv-00389-SEB-TAB, 2015 WL 1125032, at *8 (S.D. Ind. Mar. 12, 2015) (denying motion to dismiss); *Allergan, Inc. v. Actavis, Inc*., Case No. 2:14-CV-638 Lead Case, Case No. 2:14-CV-188 Member Case, 2014 WL 7336692, at *14 (E.D. Tex. Dec. 23, 2014) (same).

In response to Ezra's argument that the only case law Plaintiffs can provide on this point "all concern[s] Mylan," Opp'n 4, Ezra is demonstrably incorrect, as these citations, as well as those in Plaintiffs' Opening Brief, clearly show. *See also* Pls.' Mem. in Supp. of Mot. to Stay 3 n.3, May 22, 2015, D.I. 27 ("Pls.' Br.").

For the same reason, Ezra's reliance on *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir. 1985) is inapposite. In *Orthmann*, the first-filed court in Minnesota ***had already dismissed*** the case for lack of personal jurisdiction. *Id*. at 120. The 8th Circuit Court of Appeals declined to rule on this dismissal, finding that an identical, second-filed case in Wisconsin had progressed further in the meantime. *Id*. at 121. Again, the Delaware district court ***has already denied*** Ezra's motion to dismiss for lack of jurisdiction and ordered Ezra to proceed with this case in Delaware. *See* D. Del. Order, C.A. No. 15-150-LPS, D.I. 27. Jurisdiction is not "unsettled" in Delaware simply because Ezra disagrees with the Delaware district court.

Recognizing this, Ezra retreats behind a "clear and convincing" evidentiary standard of its own making. *See* Opp'n 5 ("At the very least, Plaintiffs cannot discharge their clear and convincing burden on this argument."); *see also id*. at 3 ("[C]lear and convincing circumstances supporting the stay are not present here . . . ."); *id*. at 8 ("[I]t is Plaintiffs that must show a clear and convincing case of hardship that outweighs the equities . . . ."). No such standard exists. The first-to-file rule applies to this case, and Ezra does not dispute it. Therefore ***the burden is on Ezra***—not Plaintiffs—to provide "sound reason" this case should not be stayed. *Genentech*, 998 F.2d at 938. Moreover, the passage Ezra relies upon for this supposed "clear and convincing" evidentiary burden is a quotation from a Fourth Circuit decision refusing to stay a personal injury case in view of bankruptcy proceedings that "very well could be pending for a long period of time" and where plaintiff's health was in jeopardy due to asbestos-related injuries. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 128 (4th Cir. 1983). *Williford* has no bearing on the circumstances of this case, where Hatch-Waxman litigation among the same parties is

4

already proceeding in Delaware.[4] In any event, Plaintiffs have already proven that the clear circumstances of this case support a stay, as discussed further in their opening brief, Pls.' Br. 8-10, and *infra* at Section II.D.

### B. Ezra's Speculation Regarding Case Schedules Is No Sound Reason To Depart From The First-To-File Rule

While Ezra does not dispute that the first-to-file rule applies to this case, it argues the Court should make an "exception" because claim construction deadlines and trial will occur earlier here than in Delaware. Opp'n 5-6. Although the parties have submitted a proposed scheduling order in Delaware, the Delaware district court has yet to set the deadlines. Moreover, during the extensive negotiations over that proposed order, never once did Ezra propose an earlier deadline for claim constructions or trial than the dates listed in the proposed order. Ezra's argument that it desires the earliest possible resolution of the Gilenya litigations is disingenuous when Ezra did nothing to propose earlier resolution in Delaware.

Ezra also speculates that earlier claim construction deadlines in Arkansas will "greatly increase the chances of a quicker resolution," Opp'n 6, but claim construction here will not obviate the need for claim construction in Delaware, and even Ezra does not argue that claim constructions here will be binding on the Delaware Gilenya litigations.[5]

Ezra further speculates that an exception should be granted to the first-to-file rule because "even a Federal Circuit appeal of a decision here would likely be completed before a Delaware

---

[4] Ezra similarly argues that Plaintiffs should bear a "particularly high" burden to prove a stay is warranted "given that this is a Hatch-Waxman action . . . ." Opp'n 3. But "the Hatch-Waxman Act was not intended to burden patent holders or reduce the patent protection afforded in ANDA cases . . . ." *AstraZeneca*, 2014 WL 5778016, at *8.

[5] Moreover, as this Court's Initial Scheduling Order does not include any claim construction deadlines, it is unclear what dates Ezra is relying on for its argument. *See* Dkt. No. 23.

5

court would even reach a trial . . . ." Opp'n 6. Ezra offers no support for its conjecture, nor can it. Ezra cannot foretell the deadlines the Delaware district court will set, nor the time it will take to resolve either this case or the Delaware litigation, nor the time it will take the Federal Circuit to decide any subsequent appeals. None of these dates is certain. What *is* certain is that proceeding in parallel litigations, on different schedules, in different jurisdictions, is a recipe for inconvenience and inconsistency, and is an unnecessary strain on the judicial system. *See Kinney v. Dole Packaged Foods*, *LLC*, No. 5:14-CV-05182, 2014 WL 6859734, at *3 (W.D. Ark. Oct. 23, 2014) (stays are appropriate "to maximize the effective use of judicial resources and to minimize the possibility of conflicts between different courts").

Ezra relies on the parties' proposed scheduling order in Delaware to assure the Court that "any effort expended in this Court will not result in duplicative efforts." Opp'n 6. But proceeding in both Delaware and Arkansas on separate litigation tracks is by definition duplicative. Moreover, Ezra has already refused to agree to Plaintiffs' proposal that they consolidate discovery among the parties in Delaware, agreeing only to "make a good faith effort" to "reduce" duplicative discovery. Proposed Scheduling Order 2, *Novartis AG v. Ezra Ventures, LLC*, C.A. No. 15-150-LPS (D. Del. May 29, 2015), D.I. 33.

In any event, the Delaware litigation is already progressing rapidly. The parties in Delaware—unlike in this case—have submitted their 26(f) report, and would have been even further along if Ezra had not stonewalled participating in the 26(f) process in Delaware. In contrast, Plaintiffs here just served their complaint last week. *See* Dkt. No. 31. While Ezra has tried to serve discovery in this case, that maneuver is premature and simply an effort to create the illusion of forward momentum, when in fact the Delaware case is further along.

6

### C. No Categorical Exception Exists For Hatch-Waxman Litigation

Ezra argues it is "unfair and inefficient" to apply the first-to-file rule in Hatch-Waxman litigations where Plaintiffs file a substantively identical complaint in two jurisdictions. Opp'n 6-7. This argument is inconsistent with several district court cases applying the first-to-file rule in similar circumstances. Ezra's mere say-so is not a sound reason to depart from that practice.

For example in *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006 (N.D. Ill. 2009), the District Court for the Northern District of Illinois stayed the second-filed litigation in Illinois pending the resolution of a personal jurisdiction dispute in Delaware. Plaintiffs first filed a complaint in Delaware and, just hours later, filed a second complaint in Illinois to protect their interests under the Hatch-Waxman Act, which requires patentees to sue within 45 days of receiving a Paragraph IV letter in order to receive the 30 month stay of FDA approval the Act provides. *Id*. at 1007. The district court granted plaintiffs' motion to stay, applying the first-to-file rule and rejecting defendants' arguments that plaintiffs' filing of complaints in two jurisdictions constituted forum-shopping and bad faith. *Id*. at 1010. As the district court explained:

> The filing of so-called protective suits appears to be motivated in large part by the ambiguity of the Hatch-Waxman Act, which imposes "a strict statutory 45-day window in which to file suit" . . . but "is silent . . . whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired."

*Id*. (internal citations omitted). The district court's decision is consistent with a line of cases applying the first-to-file rule to Hatch-Waxman cases in similar circumstances. [6]

---

[6] *See, e.g.*, *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 09-742-JJF, 2010 WL 256548, at *7 (D. Del. Jan. 20, 2010); *Pfizer, Inc. v. Mylan, Inc.*, C.A. No. 1:09-CV-79, 2009 WL 10270101, at *3 (N.D.W. Va. Nov. 20, 2009); *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, No. 1:07-CV-993, 2007 WL 4284877, at *2 (W.D. Mich. Dec. 3, 2007); *PDL Biopharma, Inc. v. Sun Pharm. Indus., Ltd.*, No. 07-11709, 2007 WL

Ezra's argument that filing two complaints in separate jurisdictions should be considered an "exception" to the first-to-file rule is exactly the kind of mechanical approach that courts in this District have rejected. *See, e.g.*, *Orthmann*, 765 F.2d at 121 ("The rule is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration."); *Ralcorp Holdings, Inc. v. Frito-Lay N. Am., Inc.*, No. 1:12CV00018 JLH, 2012 WL 933137, at *1 (E.D. Ark. Mar. 20, 2012) (same); *Kinney*, 2014 WL 6859734, at *2 (same).

### D. A Stay Is Warranted Even In The Absence Of The First-To-File Rule

Even if the first-to-file rule did not apply—which even Ezra concedes it does—this case should still be stayed pursuant to the Court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

"A Court may properly stay an action where the following criteria are met: (1) the stay does not prejudice the non-movant; (2) the movant would suffer hardship and inequity without a stay; and (3) the stay serves the interests of judicial economy and efficiency." *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 WL 1539325, at *1 (W.D. Ark. May 25, 2007).

Ezra disputes the first factor is met because of "the harm of forcing Ezra . . . to litigate in Delaware" and "the harm to the public . . . by forcing the litigation to the longer Delaware schedule . . . ." Opp'n 3. To the extent Ezra argues that it is harmed by litigating in a jurisdiction where personal jurisdiction is "unsettled," Ezra is wrong. As explained above in

---

2261386, at *3 (E.D. Mich. Aug. 6, 2007); *Schering Corp. v. Caraco Pharm. Labs., Ltd.*, No. 06-14386, 2007 WL 1648908, at *3 (E.D. Mich. June 6, 2007); *see also Takeda Pharm. Co. v. Mylan, Inc.*, No. 12cv0026, 2012 WL 932147, at *3 (W.D. Pa. Mar. 19, 2012) (granting motion to transfer to first-filed forum).

8

Section II.A, jurisdiction is not unsettled in Delaware merely because "Ezra believes" it is. *Id*. at 2.

The second factor is clearly met, as Plaintiffs would suffer hardship if required to litigate the Gilenya cases on multiple fronts, including Arkansas, when jurisdiction is proper in Delaware and all three Gilenya cases are already proceeding there.

The third factor is met for the very same reason—staying this second-filed case so the three related Gilenya litigations can proceed in Delaware will conserve judicial resources, minimize the risk of inconsistency, and streamline the appeal process. There can be no "judicial economy and efficiency" where two identical cases proceed on separate tracks in separate fora. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) (two courts handling the same controversy is a "totally unnecessary and potentially confusing duplication of judicial effort [that] is precisely what the first-filed rule is calculated to avoid."). Courts have acknowledged that this is particularly so in Hatch-Waxman cases like this one:

> There simply is no reason for identical actions—particularly complex pharmaceutical patent cases that doubtless will require a considerable amount of the Court's time and the parties' money— to proceed simultaneously in two federal courts. Indeed, this Court has an obligation to avoid such wasteful duplicative litigation. Moreover, in addition to consuming the limited resources of the judiciary, allowing both actions to proceed simultaneously presents the risk of conflicting decisions.

*Pfizer v. Apotex*, 640 F. Supp. 2d at 1008 (footnote omitted); *see also PDL Biopharma*, 2007 WL 2261386, at *2 (staying second-filed Hatch-Waxman litigation, and finding that "[r]equiring two courts to adjudicate identical suits will do nothing to further judicial efficiency or reduce delays in this case or any others.").

Ezra's only remaining argument—that a stay is not appropriate because there is at least some chance that its product could enter the market sooner—rests entirely on Ezra's speculation

9

as to the merits of its own case and the FDA's approval timeline, along with Ezra's mistakenly narrow view of the Hatch-Waxman Act. Opp'n 6 n.1. The Hatch-Waxman Act is not intended to promote solely the interests of corporations who want to sell generic copies of an innovator's drug. Rather, it "strikes a balance between the sometimes-competing policy interests of inducing pioneering research and development of new drugs and enabling production of low-cost, generic copies of those drugs." *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 557 F.3d 1346, 1348 (Fed. Cir. 2009). Ezra's argument that public policy somehow mandates denial of a motion to stay has already been rejected. *See, e.g., Pfizer v. Apotex*, 640 F. Supp. 2d at 1010 (acknowledging that "one goal of the Hatch-Waxman Act is to facilitate the approval of generic drug alternatives" but refusing to "conclude that the mere fact that this case arises under the Hatch–Waxman Act provides a sufficient basis for refusing to enter a stay").

Furthermore, Ezra's speculation about market entry fails to consider the FDA's approval timeline. Ezra's ANDA product has not been approved. Even if this case proceeded to trial a month from now, and even if Ezra were successful—which it could not be—Ezra is unlikely to get FDA approval to market its generic Gilenya for several more years. For example, on December 20, 2005, Teva Pharmaceuticals USA submitted an ANDA seeking approval to market Linezolid Tablets, 600 mg—a generic version of the branded drug Zyvox. The FDA approved Teva's ANDA on May 18, 2015—***nine and a half years*** after Teva first filed its ANDA. *See* Letter from Carol A. Holquist, Acting Deputy Dir., Office of Regulatory Operations, Office of Generic Drugs, Ctr. for Drug Evaluation & Research, to Teva Pharmaceuticals USA (May 18, 2015), *available at* http://www.accessdata.fda.gov/drugsatfda_docs/appletter/2015/078061Orig1s000ltr.pdf. Similarly, the FDA approved Roxane Laboratories, Inc.'s ANDA seeking approval to market a

10

generic version of Lotronex *six years* after Roxane first filed its ANDA. *See* Letter from Carol A. Holquist to Roxane Laboratories, Inc. (June 3, 2015), *available at* http://www.accessdata.fda.gov/drugsatfda_docs/appletter/2015/200068Orig1s000ltr.pdf; *see also* Letter from Carol A. Holquist to Lupin Pharmaceuticals, Inc. (May 28, 2015), *available at* http://www.accessdata.fda.gov/drugsatfda_docs/appletter/2015/204079Orig1s000ltr.pdf (generic Moxeza approved three and a half years after ANDA filing); Tracey Walker, *HSCA to FDA: Address Backlog of Generic Drug Applications*, Formulary Watch (June 9, 2015), http://formularyjournal.modernmedicine.com/formulary-journal/news/hsca-fda-address-backlog-generic-drug-applications?page=full (FY2014 projections of median time to approval were 42 months and increasing year over year).

Plaintiffs filed in two jurisdictions because of the uncertainties posed by the Hatch-Waxman framework. *See Pfizer v. Mylan*, 2009 WL 10270101, at *2 (acknowledging the "incredible risks on patent holders who file a protective suit in a single jurisdiction" under the Hatch-Waxman Act); *Abbott Labs. v. Mylan Pharm., Inc*., No. 05 C 6561, 2006 WL 850916, at *8 (N.D. Ill. Mar. 28, 2006) (the provisions of the Hatch-Waxman Act leave "patent holders . . . stuck between a jurisdictional rock and [a] hard place"). It was always Plaintiffs' intent to proceed in Delaware where NPC is incorporated, as evidenced by their immediate service of the Delaware complaint and their vigorous efforts to move the case forward in Delaware. *See* Declaration of Mailing, *Novartis AG v. Ezra Ventures, LLC*, C.A. No. 15-150-LPS (D. Del. Feb. 13, 2015), D.I. 9. Plaintiffs' filing of a protective suit in Arkansas is an unfortunate but common practice in Hatch-Waxman litigations, given "the extraordinary time limit[s]" that arise under the Act. *See Adams Respiratory*, 2007 WL 4284877, at *2 (quoting *PDL Biopharma*, 2007 WL 2261386 at *2). This Court has applied the first-to-file rule where similar concerns were

implicated. *See Crews & Assocs., Inc. v. Nuveen High Yield Mun. Bond Fund*, 783 F. Supp. 2d 1066, 1071 (E.D. Ark. 2011) (applying first-to-file rule where plaintiff filed second action "because it worried this court lacked subject matter jurisdiction. Based on the contentious issues involved in subject matter jurisdiction disputes, this worry is understandable.")

Plaintiffs have been diligent in complying with all Arkansas deadlines, have engaged local Arkansas counsel, and have been diligent in participating in this case until the Court stays this second-filed litigation. Now that the Delaware district court has denied Ezra's motion to dismiss and ordered Ezra to proceed without "further delay" in Delaware, Plaintiffs moved to stay the second-filed litigation. Ezra has provided no legally-sound reason this case should not be stayed—only its own opinion and speculation. Accordingly, Plaintiffs respectfully request that the Court grant their motion to stay this litigation so it may proceed in the first-filed forum.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court stay (or administratively close) this second-filed case pending resolution of the Delaware Action.

Dated: June 19, 2015

                                                Respectfully submitted,

                                                */s/ Martin A. Kasten*
                                                Martin A. Kasten (Ark. Bar No. 99100)
                                                Friday, Eldredge & Clark, LLP
                                                400 West Capitol Ave., Suite 2000
                                                Little Rock, AR 72201
                                                (501) 376-2011
                                                MKasten@fridayfirm.com

And

Clifford W. Plunkett (Ark. Bar No. 95158)
Friday, Eldredge & Clark, LLP
3425 North Futrall Drive, Suite 103
Fayetteville, AR 72703
(479) 695-2011
Plunkett@fridayfirm.com

*Attorneys for Novartis AG, Novartis Pharmaceuticals Corporation, Mitsubishi Tanabe Pharma Corporation, and Mitsui Sugar Co., Ltd.*

OF COUNSEL:

Jane M. Love, Ph.D.
Robert Trenchard
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7233

jane.love@wilmerhale.com
robert.trenchard@wilmerhale.com

Joseph M. O'Malley
Eric W. Dittmann
Yousef M. Mian
PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

josephomalley@paulhastings.com
ericdittmann@paulhastings.com
yousefmian@paulhastings.com

*Attorneys for Mitsubishi Tanabe Pharma Corporation and Mitsui Sugar Co., Ltd.*

Kevin S. Prussia
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

kevin.prussia@wilmerhale.com

*Attorneys for Novartis AG and Novartis Pharmaceuticals Corporation*

**CERTIFICATE OF SERVICE**

      I, Martin A. Kasten, hereby certify that on June 19, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

| | |
|---|---|
| Kyle R. Wilson | Shashank Upadhye (*pro hac vice*) |
| Richard Blakely Glasgow | Joseph E. Cwik (*pro hac vice*) |
| WRIGHT, LINDSEY & JENNINGS LLP | Jonathan Kri (*pro hac vice*) |
| 200 W. Capitol Ave., Suite 2300 | AMIN TALATI & UPADHYE |
| Little Rock, AR 72201 | 55 W. Monroe St., Suite 3400 |
| Fax (501) 376-9442 | Chicago, IL 60603 |
| Email: kwilson@wlj.com | Email: ezra-fingolimod@amintalati.com |
|        bglasgow@wlj.com | |

                                       */s/ Martin A. Kasten*
                                       Martin A. Kasten