1

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                  - - -

 4      NOVARTIS AG, NOVARTIS PHARMACEUTICALS       :  CIVIL ACTION
        CORPORATION, MITSUBISHI TANABE PHARMA       :
 5      CORPORATION, and MITSUI SUGAR CO., LTD.,    :
                                                    :
 6                        Plaintiffs,               :
        v                                           :
 7                                                  :
        ACTAVIS, INC. and ACTAVIS ELIZABETH, LLC,   :
 8                                                  :  NO. 14-1487-LPS
                          Defendants.               :
 9      ------------------------------------------
        NOVARTIS AG, NOVARTIS PHARMACEUTICALS       :  CIVIL ACTION
10      CORPORATION, MITSUBISHI TANABE PHARMA       :
        CORPORATION, and MITSUI SUGAR CO., LTD.,    :
11                                                  :
                          Plaintiffs,               :
12      v                                           :
                                                    :
13      EZRA VENTURES, LLC,                         :
                                                    :  NO. 15-150-LPS
14                        Defendant.                :
        ------------------------------------------
15      NOVARTIS AG, NOVARTIS PHARMACEUTICALS       :  CIVIL ACTION
        CORPORATION, MITSUBISHI TANABE PHARMA       :
16      CORPORATION, and MITSUI SUGAR CO., LTD.,    :
                                                    :
17                        Plaintiffs,               :
        v                                           :
18                                                  :
        HEC PHARM CO., LTD., HEC PHARM GROUP,       :
19      and HEC PHARM USA INC.,                     :
                                                    :  NO. 15-151-LPS
20                        Defendant.                :
                                    - - -
21
                                Wilmington, Delaware
22                              Monday, June 22, 2015
                                Telephone Conference
23
                                    - - -
24
        BEFORE:         HONORABLE LEONARD P. STARK, Chief Judge
25
                                    - - -
```

EXHIBIT A

```
                                    2

 1  APPEARANCES:

 2
        McCARTER & ENGLISH, LLP
 3      BY:  DANIEL M. SILVER, ESQ.

 4           and

 5      WILMER CUTLER PICKERING HALE and DORR, LLP
        BY:  JANE M. LOVE, ESQ.
 6           ROBERT TRENCHARD, ESQ.
             (New York, New York)
 7
             and
 8
        WILMER CUTLER PICKERING HALE and DORR, LLP
 9      BY:  KEVIN S. PRUSSIA, ESQ., and
             CAITLIN R. LOOBY, ESQ.
10           (Boston, Massachusetts)

11              Counsel for Novartis AG and
                Novartis Pharmaceuticals Corporation
12

13      STAMOULIS & WEINBLATT, LLP
        BY:  STAMATIOS STAMOULIS, ESQ.
14
             and
15
        AMIN TALATI & UPADHYE, LLP
16      BY:  JOSEPH E. CWIK, ESQ.
             (Chicago, Illinois)
17
                Counsel for Ezra Ventures, LLC
18
             and
19
        FARNEY DANIELS, P.C.
20      BY:  MICHAEL A. SIEM, ESQ.
             (Brooklyn, New York)
21
             and
22
        FARNEY DANIELS, P.C.
23      BY:  JACQUELINE LU, ESQ.
             (Georgetown, Texas)
24
                Counsel for HEC Pharm Co., Ltd.,
25              HEC Pharm Group, and HEC Pharm USA Inc.
```

```
                                    3

 1                     - oOo -

 2                  P R O C E E D I N G S

 3            (REPORTER'S NOTE:  The following telephone
 4  conference was held in open court, beginning at 9:02 a.m.)
 5            THE COURT:  Good morning, everybody.  This is
 6  Judge Stark.  Who is there, please?
 7            MR. STAMOULIS:  Good morning, Your Honor.
 8            MR. SILVER:  Good morning, Your Honor.
 9            MR. STAMOULIS:  I guess plaintiffs go first.
10  I'm so used to being plaintiff.  This is Stamatios
11  Stamoulis, but I'm here with Dan Silver this time.
12            MR. SILVER:  Thank you, Mr. Stamoulis.
13       Good morning, Your Honor.  This is Dan Silver
14  from McCarter & English on behalf of the plaintiffs.  With
15  me on the line from the law firm of WilmerHale are Jane
16  Love, Robert Trenchard, Kevin Prussia, and Caitlin Looby,
17  all who are admitted pro hac vice in these two actions.
18            THE COURT:  Thank you.
19            MR. STAMOULIS:  Good morning, Your Honor.  This
20  is Stamatios Stamoulis.  And I'm Delaware counsel for both
21  HEC and Ezra.  With me on the line for HEC are Mike Siem and
22  Jackie Lu.  And with me on the line for Ezra is Joe Cwik.
23            THE COURT:  Good morning to all of you.  And I
24  have my court reporter here with me.  And for the record,
25  we're here in two matters, both with Novartis AG, et al as
```

```
                                    4

 1  the plaintiff and one of them versus Ezra Ventures, LLC,
 2  which is Civil Action No. 15-150-LPS, and the other with HEC
 3  Pharm Group, et al., which is Civil Action No. 15-151-LPS.
 4            I set this call after receiving the letter from
 5  Mr. Stamoulis asking at least in part for clarification as
 6  to whether the order denying without prejudice to renew the
 7  motion to dismiss for lack of personal jurisdiction also
 8  apply to the alternative request for transfer in at least
 9  one of the cases, and I did want to make clear that the
10  order intend to deny the motion for request of a transfer as
11  an alternative remedy.
12            But I thought we could certainly talk about that
13  further, and also I believe the motion for certification of
14  an interrogatory appeal which is opposed by plaintiffs I
15  think is now fully briefed, and I thought that provided a
16  good opportunity to talk as well about the case.
17            I know there is also a pending request for
18  scheduling including in the third case the Actavis case, and
19  I don't believe those folks are on the phone this morning.
20  So I don't want to get into any details about scheduling,
21  but I did think in the context of these two cases, it might
22  be helpful to talk about whether I should certify the
23  interrogatory appeal and just sort of broadly whether and
24  how these cases should go forward.
25            So with that background, let me turn first I
```

```
                                    5

 1  guess to defendants actually in whatever order the
 2  defendants wish.
 3            MR. CWIK:  Yes, Your Honor.  This is Joe Cwik
 4  for Ezra.
 5            You're correct, we have fully briefed the motion
 6  for certification for interrogatory appeal.  In our opinion,
 7  this is a very close question of jurisdiction.  We, of
 8  course, received your order denying our motion to dismiss,
 9  and we'll respect that order, but at the same time we think
10  it is a very close question that could really use a Federal
11  Circuit look at.
12            You know, we've got to remember that I know
13  that the Acorda and the AstraZeneca decisions were certified
14  for appeal.  I think Your Honor certified the Acorda case.
15  In both those cases, the defendant was Mylan which is one of
16  the largest generic companies in the world, so, of course,
17  they have quite a few more contacts with Delaware than our
18  client Ezra.  Ezra, for all intents and purposes, is a small
19  startup company in Arkansas.
20            So on the continuum of facts, we have Mylan
21  which has significantly more contacts in Delaware than our
22  case.  Our client is Ezra Pharmaceuticals in Arkansas.  So
23  that if the Acorda and the AstraZeneca fact patterns are a
24  close enough question for Federal Circuit review, then
25  certainly our set of facts which have much less contacts in
```

6

Delaware should be even a closer question of jurisdiction and would also benefit from a Federal Circuit review. That is our position on the motion for interrogatory appeal as to Ezra.

THE COURT: As to Ezra, is it your request, what would you propose, with respect to whether I enter a schedule and you go forward were I to certify the interrogatory appeal on the jurisdiction issue?

MR. CWIK: Yes, Your Honor. If you were to grant our motion, we would request a stay of the Delaware case. That would be our preference.

The outlying facts and very unique facts circumstance for Ezra is that we have the second suit in Arkansas that was filed by plaintiffs. We didn't file that. They filed that themselves. And in the Arkansas case, we have a current trial date of April of 2016, just 20 months from now -- ten months from now.

So it's our preference that we move forward in the Arkansas case. We think it will be much more efficient to move forward in the Arkansas matter. We will have a trial in ten months from now. And most of the discovery, it can be transferred to Delaware, if we ever do come back to Delaware someday. And we're certainly willing to meet and confer with opposing counsel to figure out how that would be done, and if there was any objections to transferring that

7

discovery.

But we have this unique circumstance where we have an Arkansas court ready to try this same patent, these same set of facts ten months from now. Essentially, what the Arkansas court is going to do is it is going to go through the jungle with a machete first, it's going to clear a path, it's going to issue its *Markman* opinion, it's going to weigh the evidence, it's going to listen to the witnesses and ultimately issue an opinion at a trial in Arkansas and essentially do a lot of the work that this Court would ultimately have to do anyway. Of course, Your Honor is not bound by what the Arkansas case does, but it certainly would clear the way and make things easier to the Delaware Court in our opinion.

THE COURT: So Mr. Cwik, what is the status of the Arkansas case right now? Do you have a *Markman* hearing coming up?

MR. CWIK: Your Honor, the status of the case is the Judge has entered a preliminary scheduling order that will set us for trial in April of 2016, ten months from know. The Rule 26(f) reports are due today. We have tendered a report to the opposing side that built in a *Markman* schedule. I think our briefing of the *Markman* scheduling is done by September 1st of this year is what our proposal is. They have not given us a counterproposal

8

because they have moved to stay the Arkansas case. The last brief on that motion to stay was filed last Friday.

We understand that the Arkansas case moves fairly quickly on substantive issues but procedural issues like motions to stay sometimes can take quite a while, so we don't anticipate a ruling right away on the motion, but that is the status of the Arkansas case.

THE COURT: All right. Well, thank you for that. We'll come back to you.

But is there anything that HEC defendants want to add?

MR. SIEM: Your Honor, this is Michael Siem from Farney Daniels.

We agree with defendant Ezra. Our case is very similar in that we have no contacts with Delaware. We sent the notice letter into New Jersey, and we are again kind of a newer company in that we don't sell any products into the U.S.

So we think we're significantly different than what we saw in the Delaware with the Mylan defendants in those cases. And we believe that, we would request that we get the interrogatory appeal to get that ruled on and then stay the Delaware case also.

THE COURT: All right. Thank you.

Well, then let me hear from plaintiffs, please.

9

MR. PRUSSIA: Thank you, Your Honor. This is Kevin Prussia from WilmerHale. If I could, I'll address the Arkansas question just to clarify exactly what is going on in that venue.

As Your Honor knows, we filed a protective suit in Arkansas in the chance that the Ezra defendant would contest jurisdiction in Delaware, which it did. It is certainly true that that Court has set a date for April 2016. That was pursuant to what I understand is a form scheduling order that it issued in cases as they're filed. There was no date in there for *Markman*. There were no dates in there for contentions or any of the other sorts of things that are unique to patent cases.

And as we understand it from our local counsel, the date is not going to stick. The average trial time in Arkansas for patent cases is 30 months. So the idea that this case is going to get tried in April 2016 in Arkansas, I have to say I think it is not one that reflects reality and certainly not one that is consistent with the history of that jurisdiction.

There has been nothing that has occurred in Arkansas to give us the sense that somehow now it has become this "rocket docket." There hasn't even been a scheduling order that has been -- discovery plan that has been entered yet in the case. It is due today. There are no schedule

Page 10

1  for contentions, as I mentioned. There is no date for
2  *Markman*. None of that is on the calendar.
3       Just to take a step back as to the landscape of
4  what is going on with these products and these patents.
5  There are three patents covering this product, Gilenya,
6  which was approved in 2010, and it is the first oral drug
7  that was approved by the FDA to treat multiple sclerosis.
8  There are three patents. There are two at issue in this
9  case. One is a compound patent that expires in February of
10 2019. The other is a formulation patent which is in the
11 case pursuant to a counterclaim by HEC, and that expires
12 March of 2026. There is another patent that hasn't been
13 challenged by any party. That doesn't expire until
14 September of 2017.
15      So regardless of when all these cases resolve
16 themselves, there will be no FDA approval for any generic
17 drug for Gilenya because every generic that has submitted an
18 application has submitted a paragraph III on that patent
19 that expires in September of 2017.
20      So we proposed a trial date in Delaware that all
21 the generics, all three generics, Actavis, Ezra, and HEC,
22 had agreed to, which is five months before that September
23 2017 expiration date for that patent that is not challenged
24 by any defendant.
25      So we're not in a situation here where there is

Page 11

1  pending generic entry. We have NCE exclusivity that doesn't
2  even expire until September of this year. We've got a 30
3  month statutory stay that adds on to that. And we've got a
4  patent that doesn't expire until September of 2017, that no
5  one has challenged.
6       On the certification question, Your Honor, I
7  just want to raise a few points.
8       The first is that, as Your Honor knows,
9  certification is supposed to be granted sparingly and only
10 in exceptional cases, and the AstraZeneca and the Acorda
11 case is already up to the Federal Circuit presenting this
12 issue of jurisdiction in Hatch-Waxman cases.
13      The scope of the question that is to be
14 addressed by the Federal Circuit was not limited to the
15 narrow question as to whether mailing a paragraph IV notice
16 letter to a Delaware citizen is sufficient to trigger
17 specific jurisdiction. It was a much broader question.
18      And the Federal Circuit, that briefing has
19 already started. The opening merits brief was filed I think
20 a month or so ago. Responsive merits brief I think is due
21 next month. It is well ahead.
22      And there is nothing particularly exceptional
23 about this case that would warrant the 1292(b) petition to
24 be granted. As my colleagues just mentioned, essentially
25 they just disagree with Your Honor's ruling based on the

Page 12

1  facts. They say, hey, we've got different facts here.
2  Our facts are different from AstraZeneca. Our facts are
3  different from Acorda.
4       Well, that really isn't enough. 1292(b) isn't
5  supposed to be about facts, it's supposed to be controlling
6  questions of law. They essentially admitted this is a
7  dispute over facts, and we think that is insufficient to
8  present a controlling question of law.
9       So it's not an exceptional case. It doesn't
10 present the controlling question of law.
11      So the next question is, is there a substantial
12 ground for difference of opinion? And we think no.
13      Now, they disagree with the rulings, but the fact
14 of the matter is Your Honor wasn't allowed -- every single
15 motion that has been filed by every single generic, all of
16 which are copycat motions to dismiss for jurisdictional
17 grounds has been dismissed -- has been denied all across the
18 country, not just in Delaware but in New Jersey, in Texas, in
19 Indiana, in Illinois, all across the country.
20      Now, I guess everyone could be wrong, and I
21 guess the Federal Circuit will let us know some time this
22 year or at the beginning of next year, but there is no
23 substantial difference of opinion. There has been harmony,
24 unanimity in the way this issue has been decided across the
25 country. So I don't think that favors granting a petition

Page 13

1  either.
2       The third question is whether an immediate
3  appeal will have some material impact on this case that
4  would ultimately advance the litigation. I think there
5  again the answer is no; and that is a for a few reasons.
6       The first is, as I said, there is a patent that
7  is not challenged that is in place that does not expire
8  until September of 2017. There no imminence here with
9  respect to the resolution of this case on the merits. That
10 is one.
11      The second reason is, and it is always hard to
12 predict what the Federal Circuit is going to do, but it
13 seems to me highly unlikely they're going to take up this
14 appeal having just granted a petition in the Acorda and
15 AstraZeneca cases. I think we all on this phone know the
16 Federal Circuit rarely takes up these interrogatory appeals.
17 It did so on a broad legal issue, and the idea it is going
18 to take up additional cases just doesn't seem to be likely.
19      And you don't need to take my word for it. You
20 can just look across the country and see what has happened
21 in all these other cases in which motions to dismiss were
22 denied. There have been no other cases for which a 1292(b)
23 motion was granted. And, of course, there are no -- it
24 follows there are no other cases that are pending before the
25 Federal Circuit aside from AZ and Acorda. I think that is a

14

strong indication that the likelihood of this being accepted on appeal is pretty low.

So, Your Honor, in short, there is a case that is pending in this jurisdiction against Actavis. It is going to go forward. They don't contest jurisdiction. We've got HEC and Ezra. They disagree with Your Honor's ruling. That is their right. They can take that up in the normal course in the appeal of this case once we have final judgment. But there is a case that is going to proceed in Delaware.

Therefore, for judicial economy, for party efficiency, there are a whole host of reasons why these cases should all proceed together, in harmony. There is no need for parallel litigation. These are all first filed cases. There is a strong presumption in proceeding with first filed cases in the forum that plaintiff chooses. And there really is nothing exceptional as presented by these particular circumstances that would justify from departing that well established rule here.

THE COURT: All right. Mr. Prussia, what about certifying and not staying this case? Why shouldn't I contemplate that?

MR. PRUSSIA: Well, Your Honor, I just don't think this meets the criteria for granting a 1292(b) motion. You know, the most important thing for us is proceeding with

15

discovery. So if Your Honor feels inclined to grant the 1292(b) motion and proceeding with discovery in that forum, that is something that, while it wouldn't be our first choice, it is something we would be fine with. But we don't think that this meets the standard for a granting a 1292(b) petition.

And we don't think the Federal Circuit is likely to take it. It hasn't happened in any other case. We just think it is going to increase litigation costs to have to brief this issue again to the Federal Circuit, given the low likelihood that it is going to take it.

THE COURT: All right. Thank you. Let me turn back in guess first to Ezra. Mr. Cwik, is there anything you want to add?

MR. CWIK: Your Honor, a couple things.

On the Arkansas case, yes, it's true that the Arkansas case could theoretically change, but we received no indication whatsoever that it will actually change. The presumption is that as the schedule will stay in place. We have built in a schedule and proposed something so that the *Markman* issue can be resolved in time.

You know, Ezra is different. Ezra does not have a counterclaim on the formulation patent that HEC does, so we're a little bit different on that point.

And as far as the other personal jurisdiction

16

decisions that have denied personal jurisdiction motions similar to Ezra's across the country, we all know that Mylan has been filing the motion to dismiss for personal jurisdiction on almost every case that they do, so I think 80 or 90 percent of the denials of personal jurisdiction motions have been Mylan's motions, so all dealing with the Mylan set of facts.

Again, our set of facts is very different than the Mylan set of facts. We're a small startup company in Arkansas. Mylan is one of the largest generic pharma companies in the world. So we think the Court would really, the Federal Circuit would benefit from our fact pattern in distinguishing really what is the line where enough contacts are enough contacts for a pharma company to be in Delaware.

Thank you, Your Honor.

THE COURT: Well, help me on this, Mr. Cwik. Given the status of the two appeals that have already been certified and are well underway in briefing, isn't it possible, maybe even likely, if I were to certify this one, you will be significantly behind the others, and before your appeal can be resolved, there will be a decision in the others and then perhaps even at that point, the Federal Circuit might send your case back to me so that I can, in the first instance, evaluate the application of whatever they say in the other cases to this one.

17

That is part of one of my concerns in your case. And another way to put it I guess is if I were to consider taking the unusual move of certifying interrogatory appeal, why wouldn't it be better to consider doing that after we hear from the Federal Circuit in the other cases as quickly as possible, apply that ruling to your facts here and then, if you are unhappy with the result, we certify for an interrogatory appeal? I can't envision doing it twice is part of what I'm thinking. So all these things are concerns I have as I decide whether or not to certify right now the interrogatory appeal you're proposing.

Comment on any of that, if you would, please.

MR. CWIK: Yes. Thank you, Your Honor.

You are correct that is a possible scenario. But if we look at the Mylan appeals that are going on and the Mylan contacts with Delaware, there is a variety of facts that the Federal Circuit could affirm on that simply aren't present for Ezra.

We know that Mylan is registered to do business in Delaware. That could be a reason for the Federal Circuit to affirm that wouldn't apply to us.

We know that Mylan has sued in Delaware, been sued in Delaware multiple times. Those contacts could be a reason for the Federal Circuit to affirm those opinions that don't apply in our case.

18

We know that Mylan has sold products and continues to sell products into Delaware. Those are also facts where the Federal Circuit could affirm the jurisdiction in Delaware, and those contacts aren't present for Ezra.

So, sure, we could learn something from the Federal Circuit opinion, but I think it is just as likely that the AstraZeneca and the Acorda opinions really won't resolve the jurisdiction question as it applies to a smaller limited pharma company that Ezra is and I presume HEC is. I can't speak for HEC, but I understand they're in a similar circumstance.

MR. PRUSSIA: Your Honor, if I could just interject just to sure make we clear the points on that.

THE COURT: Yes. Hold on a second.

Mr. Cwik, is there anything else you wanted to add?

MR. CWIK: That's it, Your Honor. Thank you.

THE COURT: And then for HEC, Mr. Siem, is there anything you want to add?

MR. SIEM: Yes, Your Honor.

The plaintiffs continually say this is an issue of fact. There is no argument about the facts in this, and what contacts we actually have with Delaware. What it is an application of the broad standard of law that this Court has

19

applied. So we think what they're doing in the Federal Circuit is a much broader question of jurisdiction that, as Mr. Cwik said, could potentially not resolve our case. And that even if they did send it down, they may not give us sufficient guidance.

I also want to point out Mr. Prussia points out there is no other case and no other courts that have applied the law in the way that we asked for them to. That is just not true. We have had other cases in New Jersey where the Court has declined to assert jurisdiction. So there -- well, most of the courts have gone with Mylan, where they have 90 percent of the cases are that way, and that Mylan is a large company that sells products all over the country. We have a very substantially different case and cases that are close to us, the Court has declined to assert jurisdiction.

So in reading the briefing and looking at what we have, it is a factually different situation, a much more narrower question than what is up on appeal for the AstraZeneca cases and the Acorda cases.

So what we would like and what we think is that the Court should get some guidance on the facts we have here where there are no contacts in Delaware at all, not even serving a notice letter to Delaware. So we agree with Mr. Cwik and Ezra on this.

THE COURT: All right. Thank you.

20

Mr. Prussia, you may add something if you wish.

MR. PRUSSIA: Thank you, Your Honor. And I'll be brief.

The first is I think Your Honor is exactly right. Whatever the Federal Circuit decides is going to have some bearing on this case; and there is going to need to be some application of that based on how the Federal Circuit rules. And Your Honor denied this motion without prejudice with leave to renew for that reason.

So it is not clear to me what exactly would be certified, because there really isn't a decision here. There is no real opinion here to certify because Your Honor denied the motion without prejudice contemplating that how the Federal Circuit rules in AstraZeneca or Acorda may have some bearing on this issue in this case. So I don't really even think procedurally at this point there is anything to even actually certify.

The second point, Your Honor, is that we're kind of here in this -- what is a little frustrating about this issue is we're sort of operating here under a fiction.

Defendants have not denied when their product is approved, they're going to sell product in Delaware. And there is no dispute that if this were anything but the artificial world of infringement under 271(e), there would be jurisdiction here. Congress passed a statute so that we

21

wouldn't have to wait for that harm to happen. We wouldn't have to wait until the market was destroyed by generic entry to sue. There was nothing in the Hatch-Waxman statute that suggested that somehow when it did that, the jurisdiction analysis was going to be curtailed. That somehow patent owners in Hatch-Waxman cases have secondary rights to patent owners in cases which there are products launched on the market.

So all the stuff about we have less contacts than Mylan, Mylan is a big generic company, that is a big fiction. They are going to be selling product into the market. They haven't denied that at any point in the briefing.

The last point I'll offer, Your Honor, is that we think that the reason why 1292(b) is reserved for sparing exceptional cases is to protect against situations like this where we now have generics that in every Hatch-Waxman case, it is almost an automatic thing. They file a motion to dismiss for lack of personal jurisdiction on the same grounds that have been asserted by Mylan and the other generic defendants. And what it is doing to these cases, as I'm sure Your Honor has seen on your docket, is it has cluttered the docket with these copycat motions and it has provided greater uncertainty in these cases as to what is going to happen.

22

We spent now months fighting over whether the first filed case is going to be stayed, whether the second filed case is going to be stayed, whether it should be transferred, whether it should be a 1292(b) instead of proceeding on the merits of the case as we should be doing with a 30 month stay.

Respectfully, I think that granting a 1292(b) petition in this case would only further incentivize that litigation strategy by the generics, and we respectfully request you do not do so.

THE COURT: All right. Thank you. Is there anything further, Mr. Cwik?

MR. CWIK: No, Your Honor. Thank you.

THE COURT: And Mr. Siem?

MR. SIEM: Your Honor, one point. The Court has to be looking at the context that we have, that HEC has at the time it was filed, not what we're going to be doing in the future and potentially going into Delaware which has not been determined yet.

So when we look at this and look at the cases, the Court, as it has indicated, has to look at the time at when the case was filed as to our jurisdictional contacts. And so that question is something we will not get an answer from the Acorda case, and that is why it is a much broader question than what we have here. And we're looking, we

23

think we can use some guidance from the Federal Circuit.

THE COURT: All right. But, Mr. Siem, you don't deny that if HEC gets approval to market its drug product, that it will end up in Delaware; correct?

MR. SIEM: Your Honor, actually we don't know who will be distributing the product because it will not be distributed by HEC. It will be distributed by another partner.

THE COURT: Right. But can you make any representation now that whoever distributes or markets it is going to carve out of the market the State of Delaware?

MR. SIEM: No, we can't, Your Honor.

THE COURT: Thank you. Well, this has been very helpful. Let me say a few things.

Having given it a lot of thought and had some questions answered today, I am going to go ahead and deny the 1292(b) motion that is the request from the two sets of defendants on the call today for certification of an interrogatory appeal.

As I think everyone agrees, the law directs that I grant such a motion sparingly and sets out three factors that I should consider in deciding whether to exercise my discretion to treat these cases as among those rare instances where I would certify.

Having applied those three factors and thought

24

about my discretion more broadly, I have decided that these are not cases in which I should go ahead and certify.

The first factor is whether there is a controlling question of law.

On this one, I do think the defendants have met their burden. I think the question here is whether or not there is personal jurisdiction in Delaware over the defendants in these Hatch-Waxman cases. And while I think that there is, under the current law, that is not the issue really for today. The issue is whether that is a controlling question of law, and I think it is. Because if I'm wrong, then this Court lacks jurisdiction and this case will have to end. So in my view, that is a controlling question of law.

Next is whether there is substantial grounds for difference of opinion.

Here, again, I think the defendants have actually met their burden, notwithstanding if the plaintiffs are correct that the scorecard currently is that these motions are being denied uniformly. As I found in the context of the Acorda case, I believe that there is substantial ground for difference of opinion. None of us know what the Federal Circuit's view is going to be of this. I think different questions are presented in which reasonable minds can. Differ. So I do think that there are substantial grounds

25

for difference of opinion.

However, it is when I come to the third factor that I find defendant have not proven to my satisfaction that certification in these cases in the particular circumstances here would materially advance termination of these cases. And, further, I think the appropriate exercise of my discretion under the overall circumstances is not to interrupt these cases with an interrogatory appeal.

First, were I to certify, I would be confronted with the question of whether to grant the request of the defendants for a stay of litigation here while the battle is taken up in the Federal Circuit.

And I think it probably would not be wise for me to stay these two cases for reasons including that the third Actavis case is going forward. For the further reason that the jurisdictional dispute is not one that is going to ultimately eliminate the litigation between the plaintiffs and the two sets of defendants on the call today. It's only -- and I don't mean to minimize it but it's only a battle or where that litigation is going to take place. So staying these cases and just putting them on hold I don't think accomplishes much and at a minimum does not materially advance termination of the litigation because, again, the cases have to go forward somewhere at some point as long as the defendants continue to desire to market, to be approved

26

1  and ultimately market their generic drug.
2  I am also concerned, as I raised during the
3  discussion, about piecemeal litigation which generally we
4  try to avoid, but here the piecemeal litigation it seems
5  to me could really be multiplied were I to certify an
6  interrogatory appeal now, and whether or not I stayed these
7  cases pending the interrogatory appeal, there is at least a
8  reasonable chance I believe that the Federal Circuit will
9  rule in the Acorda, AstraZeneca cases before the current
10  case in front of me that we're talking about now is
11  concluded, and then somebody, either the Federal Circuit or
12  me, would have to apply what the law is after the Federal
13  Circuit rules to the specific circumstances and facts
14  presented here, all of which I think could lead to a request
15  for certification of an interrogatory appeal from that
16  subsequent decision were I to be the one to make it.
17  Here is where my discretion comes in as well.
18  I do think that certainly in the overwhelming majority of
19  matters, the Court of Appeals wants a District Judge to be
20  making these decisions in the first instance. And that is
21  what in part motivated my decision to deny without prejudice
22  the motion to dismiss and to transfer in the first instance
23  without prejudice to renew thinking that it's probably
24  best that the parties be given a chance and hopefully a
25  very expeditious manner to give me briefing, should the

27

1  defendants wish to renew their motion, to give me briefing
2  telling me how to apply whatever it is the Federal Circuit
3  says in the Acorda and AstraZeneca cases to the facts and
4  circumstances here. We'll take that motion up as quickly as
5  we possibly can, if it is renewed. And if anyone is unhappy
6  with the result, then you can seek a certification of an
7  interrogatory appeal at that time, and we'll evaluate that
8  request in the context in which it arises.
9  The further factors that I have considered that
10  I think favor exercising my discretion to make the decision
11  I'm making today include the fact that there are the
12  multiple patents here, and no matter what I do, no matter
13  which Court is handling these cases, be it a District Court
14  or the Federal Circuit, be it this District or the District
15  of Arkansas, I'm advised there are no circumstances in which
16  the defendants could be marketing their generic products
17  until more than two years from now, in September of 2017
18  based on their paragraph III filings.
19  So all of that suggests to me, again, that
20  the proper exercise of my discretion, given the defendants'
21  failure on the third factor for a 1292(b) motion, given that
22  those motions are granted sparingly, is, as I have said, to
23  deny the certification request and then turn my attention,
24  as I will in due course, to what is the appropriate schedule
25  in these matters so that the cases can go forward.

28

1  Let me further add that, I'll get an oral order
2  out to this effect, but I do want the parties to provide a
3  joint status report within seven days of whenever the
4  Federal Circuit issues a decision in one or both of the
5  pending Acorda, AstraZeneca interrogatory appeals. And in
6  that status report, I would expect to see what the parties
7  proposals are for whether or not the motion to dismiss is
8  going to be renewed, and, if so, how quickly and how
9  succinctly such a motion can be briefed, so, again, we can
10  resolve that as expeditiously as possible and allow you all
11  to consider your options at that point.
12  So I don't want to have any reargument, but I
13  have said a lot. I want to make sure that it has been
14  understood and see if you have any questions about any of
15  that.
16  First, Mr. Cwik?
17  MR. CWIK: Yes, Your Honor. Thank you for your
18  time on this matter. It is appreciated.
19  We understand your order. I guess one quick
20  question I had on the motion to renew or motion to dismiss
21  for the personal jurisdiction, would that be seven days of
22  the Federal Circuit decision or seven days of the Federal
23  Circuit mandate?
24  THE COURT: I would like to hear from you all
25  within seven days of the Federal Circuit decision. If, at

29

1  that time, having seen the decision, anyone thinks that
2  perhaps the renewal of the motion should wait for the
3  mandate, that is something you can discuss in your status
4  report.
5  MR. CWIK: Okay.
6  THE COURT: Understood?
7  MR. CWIK: Yes, Your Honor. Thank you.
8  THE COURT: Okay. Mr. Siem?
9  MR. SIEM: Nothing further, Your Honor. Thank
10  you.
11  THE COURT: Okay. Mr. Prussia?
12  MR. PRUSSIA: Nothing further from plaintiffs,
13  Your Honor. Thank you.
14  THE COURT: Thank you all very much for your
15  time. Good-bye.
16  (Telephone conference ends at 9:43 a.m.)
17
18  I hereby certify the foregoing is a true and accurate
   transcript from my stenographic notes in the proceeding.
19
20  /s/ Brian P. Gaffigan
   Official Court Reporter
21  U.S. District Court
22
23
24
25